

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00090-CR

_____


KEITH ASHLEY HUBBARD, Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the 5th Judicial District Court
Bowie County, Texas
Trial Court No. 08F0792-005



Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

A Bowie County jury found Keith Ashley Hubbard guilty of seven counts[1] of aggravated sexual assault of Tabitha Fowl,[2] a child. Hubbard was sentenced to fifty years' imprisonment for each of the seven counts, the sentences to run consecutively. During the trial on the merits, the trial court prohibited Hubbard from cross-examining several witnesses about whether the child had made accusations against others of sexual assault.

On appeal, Hubbard contends that the exclusion of evidence that the child had lodged accusations against four other people (including two members of Hubbard's household) of having sexually assaulted her was harmful error.

We affirm the judgment.

**Facts**

In June 2007, then five-year-old Tabitha resided in the same residence with Hubbard. Also living in the residence were Buffy Hubbard (Hubbard's wife and the aunt of Tabitha) and Buffy's three sons.

Bobby Mixon, a Wake Village police officer, was called to the Hubbard residence to investigate allegations of sexual assault on Tabitha. Hubbard was prohibited from establishing by

---

[1]Although Hubbard was originally charged by indictment with nine counts of aggravated sexual assault of a child, two of those counts were dismissed at the instance of the State.

[2]Tabitha Fowl is the pseudonym used by the trial court to protect the child's privacy.

the testimony of Mixon that the allegation was not that Hubbard had committed an assault but, rather, that one of Buffy's juvenile sons had done so.

Karrah Dickeson interviewed Tabitha at the Children's Advocacy Center in Texarkana, Texas. During that interview (and again at trial), the child described the different ways that Hubbard sexually assaulted her. Tabitha testified that "white stuff" came out of Hubbard's "wrong spot." However, Dickeson testified that Tabitha also twice denied that "white stuff" came out of Hubbard's "private." During the interview, but not at trial, Tabitha identified one of Buffy's sons as the source of the "white stuff."[3]

On voir dire outside the presence of the jury, or upon in camera examination, Mixon, Buffy, and Dickeson testified that the child had also made outcries of sexual assault against Buffy's two juvenile sons. Specifically, Hubbard sought to rebut Tabitha's trial testimony that the "white stuff" came from Hubbard by introducing testimony that during her interview, Tabitha had identified one of Buffy's sons as the source of the "white stuff."

April Graves (who identified herself as Tabitha's adoptive mother) testified, in camera, that Tabitha "has mentioned all three in different sexual acts against her," referencing two of Buffy's sons by name and Hubbard by inference. In accord with Rule 412 of the Texas Rules of Evidence, Hubbard made clear his intention to question several witnesses (including Mixon, Dickeson, and Graves) regarding accusations of sexual assault made by Tabitha against other

---

[3]The video recorded interview is referenced outside the presence of the jury. The recorded interview was not included in the record on appeal, but it was entered in the trial court as a record exhibit only.

persons, including Buffy's two juvenile sons; Hubbard also wanted to bring out that Tabitha had identified someone other than Hubbard as the source of the "white stuff." After proper in camera hearings as well as hearings and offers of proof outside the presence of the jury, the trial court ruled that such evidence was inadmissible under Rules 403 and 412 of the Texas Rules of Evidence.

**Standard of Review**

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Mozon v. State*, 991 S.W.2d 841, 846–47 (Tex. Crim. App. 1999); *Sherman v. State*, 20 S.W.3d 96, 100 (Tex. App.—Texarkana 2000, no pet.). Such an inquiry necessarily depends on the facts of each case. *Sherman*, 20 S.W.3d at 100. While an appellate court may decide it would have ruled differently from the trial court on a particular evidentiary issue, such disagreement does not inherently demonstrate an abuse of discretion. *Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003). Instead, the appellate court may only find an abuse of discretion when the trial court's decision "is so clearly wrong as to fall outside the zone of reasonable disagreement or when the trial court acts arbitrarily and unreasonably, without reference to any guiding rules or principles." *Reynolds v. State*, 227 S.W.3d 355, 371 (Tex. App.—Texarkana 2007, no pet.).

**Analysis**

The trial court prohibited several attempts by Hubbard to offer general evidence the child had accused four other people of sexually assaulting her and, more specifically, that the child

4

previously identified someone other than Hubbard as the source of the "white stuff." Hubbard argues that the exclusion of this evidence violated his rights to confrontation by limiting his ability to cross-examine the witnesses against him, and was improper because the probative value of the evidence outweighed any potential prejudicial effect it may have created.

*Rule 403*

As part of his second point of error, Hubbard argues that the trial court erred in excluding the evidence because the probative value of the evidence outweighed the danger of unfair prejudice.

Generally, our rules favor admission of all relevant evidence, and we presume relevant evidence to be more probative than prejudicial. *See, e.g.*, TEX. R. EVID. 402; *Fletcher v. State*, 852 S.W.2d 271, 277 (Tex. App.—Dallas 1993, pet. ref'd). Most relevant evidence offered by one party will be prejudicial to the opposing party. *Id.* The trial court can exclude relevant evidence if its unfair prejudice substantially outweighs its probative value. TEX. R. EVID. 403; *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g); *Fletcher*, 852 S.W.2d at 277. "'Unfair prejudice' . . . refers to an 'undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Cohn v. State*, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993). Under Rule 403, the trial court may also exclude relevant evidence that would confuse the issues, mislead the jury, cause undue delay, or needlessly present cumulative evidence.

5

In determining whether the potential prejudice of evidence outweighs its probative value, we consider: (1) how compellingly the evidence makes a consequential fact more or less probable, (2) the evidence's potential to impress the jury in an irrational way, (3) the time needed to develop the evidence, and (4) whether other evidence is available to prove the consequential fact at issue. *Mozon*, 991 S.W.2d at 847.

The first factor mentioned in *Mozon* (how compelling the evidence makes a consequential fact more or less likely) and the fourth factor (whether other evidence is available to prove the consequential fact at issue) weigh heavily in favor of excluding the evidence. "There is no purely legal test to determine whether evidence will tend to prove or disprove a proposition—it is a test of logic and common sense." *Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001). The key here is the "consequential fact" element of both factors. Accusations against third parties, even other members of Tabitha's family or household, of different and separate sexual assaults are inconsequential and not probative of the accusations against Hubbard. That the child testified that she saw "white stuff" come out of one of Buffy's sons is likewise not probative of whether she saw "white stuff" come from Hubbard and there is no evidence that the two instances are the same event.

The second factor (the potential of the evidence to impress the jury in an irrational way) weighs in favor of exclusion. All evidence prejudices one party or the other. However, evidence that the child has accused others of separate sexual assaults is, at best, of questionable relevance to

6

the question of whether Hubbard assaulted the child and it could easily have the effect of confusing or misleading the jury.

Very little time would be needed to develop the evidence; therefore, the third factor weighs in favor of admission.

In support of his appeal, Hubbard relies primarily on the case of *Kesterson v. State*, where the defendant was accused of sexually assaulting his five-year-old stepdaughter. 997 S.W.2d 290, 292 (Tex. App.—Dallas 1999, no pet.). During the child's interview with the State's psychologist, she accused a different male relative of the very assault with which the defendant was charged, but, at trial, the child testified that the other relative never touched her. The other male relative had access to the child and disappeared before trial. The defendant sought to introduce the child's statement through cross-examination of the psychologist.[4] The State argued that Rule 412 excluded any references to any other sexual abuse and the trial court excluded the evidence, relying on both Rule 412 and Rule 403.

In *Kesterson*, the court of appeals held that the evidence was admissible under Rule 403, noting that the child's testimony of the events varied depending on who was questioning her, that the child had a low IQ and suffered from attention deficit disorder, that several witnesses testified to the child's reputation for telling false stories, and that the defendant's defensive theory directly related to the excluded evidence. *Id.* at 294–95. The court also held the evidence admissible

---

[4]The defendant also sought, unsuccessfully, to have the child's statement admitted through direct examination of the defendant's retained psychologist and the child.

under Rule 412, finding that the evidence was probative of the defendant's theory and that "no rational jury would conclude a five year old child was promiscuous or consented, in any way, to sexual assault."[5]   *Id.* at 295.   Finding the erroneous exclusion harmful to the defendant, the court of appeals reversed the trial court and remanded the matter for a new trial.   *Id.* at 295–96.

The distinguishing facts of *Kesterson* are absent in the present case.   In *Kesterson*, the child had accused two different men of the same assault.   Here, the child accused three different males of separate and distinct assaults on her that occurred at different times; on appeal, Hubbard does not dispute that other and separate offenses of a like nature were committed by others against the child.   Therefore, we find *Kesterson* distinguishable.

Introducing the evidence of other alleged assaults risked misleading the jury or confusing the issues.   For the foregoing reasons, we find that the probative value of the excluded evidence was substantially outweighed by the danger of unfair prejudice.   We overrule Hubbard's point of error pertaining to the applicability of Rule 403 in the exclusion of evidence.

*Rule 412 and Confrontation Clause Issues*

Hubbard raises the question of whether the trial court could have excluded the complainant's statement under the balancing test within Rule 412.[6]   Rule 412, the "rape shield

---

[5]The *Kesterson* court also held that in the event "rule 412 was ever intended to classify sexual assault of a five year old child as 'past sexual behavior of a victim,' the facts in [the *Kesterson*] case meet the exception of 412(b)(2)(E)." *Kesterson*, 997 S.W.2d at 295 n.4.

[6]TEX. R. EVID. 412(b)(3).

8

law," governs the admissibility of a complainant's previous sexual conduct in a sexual assault prosecution. TEX. R. EVID. 412; *see Wofford v. State*, 903 S.W.2d 796, 798 (Tex. App.—Dallas 1995, pet. ref'd). It protects a complainant's previous sexual conduct from exposure, except in limited circumstances. TEX. R. EVID. 412; *see Wofford*, 903 S.W.2d at 798.[7] The rule includes an exception for testimony "constitutionally required to be admitted." TEX. R. EVID. 412(b)(2)(E). As with the pertinent test examined above as it relates to Rule 403, to be admitted into evidence through one of Rule 412's exceptions, the probative value of the evidence must still outweigh its prejudicial effect.[8]

Hubbard argues that the excluded evidence is "constitutionally required to be admitted" under the Confrontation Clause of the United States Constitution and that the probative value outweighs the evidence's prejudicial effect. Applying the same analysis we applied to the court's Rule 403 ruling, and observing that evidence of the child's conduct in other circumstances was of little relevance to the cogent question in the trial, we likewise hold that the probative value of the evidence is outweighed by the danger of unfair prejudice and that the trial court properly excluded it under the balancing test of Rule 412. One should comprehend that Rule 412 restricts certain evidence which might otherwise be admissible; its exception from application to evidence "that is

[7]Rule 412(c) also requires an in camera proffer of evidence of prior sexual conduct and a ruling on its admissibility before it can be introduced. This procedure was meticulously followed by the trial court.

[8]The balancing test of Rule 412(b)(3) provides that a victim's "past sexual behavior" is not admissible unless "its probative value outweighs the danger of unfair prejudice." The language of this test differs from Rule 403, which provides relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."

9

constitutionally required to be admitted"[9] does nothing to trump the admissibility standards of Rule 403 because both rules are subject to the same Constitutional constraints.

The United States Constitution provides, in part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Fourteenth Amendment to the United States Constitution makes the right to confrontation applicable to the states. *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The Confrontation Clause ensures "the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *See Maryland v. Craig*, 497 U.S. 836, 845 (1990). Cross-examining an adverse party allows the jury to assess a witness's credibility and exposes facts which the jury may use in its assessment. *See Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996).

Each Confrontation Clause issue must be weighed on a case-by-case basis, carefully taking into account the defendant's right to cross-examine and the risk factors associated with admission of the evidence. *Hoyos v. State*, 951 S.W.2d 503, 510 (Tex. App.—Houston [14th Dist.] 1997), *aff'd*, 982 S.W.2d 419 (Tex. Crim. App. 1998). In speaking of the interplay of the Texas Rules of Evidence and the United States Constitution, the Texas Court of Criminal Appeals has recently observed:

> Generally, the right to present evidence and to cross-examine witnesses under the Sixth Amendment does not conflict with the corresponding rights under state evidentiary rules. Thus, most questions concerning cross-examination may be

---

[9]TEX. R. EVID. 412(b)(2)(E).

resolved by looking to the Texas Rules of Evidence. In those rare situations in which the applicable rule of evidence conflicts with a federal constitutional right, Rule 101(c) requires that the Constitution of the United States controls over the evidentiary rule. Rule 101(c) also states, "Where possible, inconsistency is to be removed by reasonable construction" as well as by reasonable application of the rule. Thus, compliance with the reasonable construction and application of a rule of evidence will, in most instances, avoid a constitutional question.

*Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009) (footnote omitted).

Even though it does not recite such a restriction within its body, Rule 403 would be subject to the same Constitutional considerations as Rule 412. Our analysis of the trial court's application of Rules 403 and 412 reflect that it was within the trial court's discretion to rule that the probative value of the excluded evidence was outweighed by the danger of unfair prejudice and that admitting the evidence presented a valid risk of jury confusion. While the Sixth Amendment protects an accused's right to cross-examine witnesses, it does not prevent a trial judge from limiting cross-examination on concerns about, among other things, "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Hammer*, 296 S.W.3d at 561 & n.7 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). Therefore, the trial court did not abuse its discretion.

We affirm the judgment of the trial court.


Bailey C. Moseley
Justice


11

Date Submitted:     March 19, 2010
Date Decided:       May 7, 2010

Do Not Publish